OPINION
{¶ 1} This accelerated appeal emanates from a judgment entry issued by the Conneaut Municipal Court, Ashtabula County, convicting appellant, Chris L. Harco, of assault. We affirm.
 {¶ 2} In the early hours of July 17, 2005, Angela Georgia and her fiancée, Frank Peterson, were visited by appellant and Jennifer Smith. Smith was angry with Georgia because she believed Georgia allowed her young daughter to view pornography several months earlier while spending the night with Georgia's daughter. Georgia denied the allegations and a strident argument followed. Testimony indicated the women were "yelling" but were not physically aggressive with one another.
 {¶ 3} Eventually, Georgia advised Smith she would activate the house's alarm system if she did not leave the property. According to Georgia, Smith continued "yelling and ranting and raving." As Georgia went inside the door to activate the alarm, she turned and noticed appellant advancing on Peterson. According to Georgia, the two men came face-to-face and appellant struck Peterson in the eye with a closed fist. A "scuffle" ensued wherein Peterson threw appellant to the ground. Georgia testified Peterson did not initiate the physical confrontation. Ultimately, Smith and appellant retreated to their vehicle and drove away.
 {¶ 4} Peterson testified appellant became aggressive after he ordered him out of the yard. He stated:
 {¶ 5} "* * * I was yelling at him to `get out of my yard. This is my house, it's 2:00 o'clock [sic] in the morning, you don't need to disturb the neighbors,' and he just kept on coming at us. Angela went in the house — in the house to get the phone and then he socked me in the eye."
 {¶ 6} Peterson testified he twice threw appellant to the ground after being struck. However, before being struck, Peterson maintained he was aggressive to neither Smith nor appellant. Peterson suffered a corneal abrasion as a result of the encounter. He was treated for the injury and ultimately missed three days of work.
 {¶ 7} Appellant's testimony differed in many material respects from Georgia's and Peterson's respective testimony. Most notably, appellant asserted Peterson was the aggressor and threw a "left hook" towards appellant's head. Appellant testified he stepped back to move Smith away from the fracas when Peterson then began throwing "hay makers" in his direction. Appellant maintained he merely put his hands up and started blocking Peterson's punches. When asked how he could explain Peterson's injury, he testified:
 {¶ 8} "Maybe when I was trying to block punches, maybe I blocked him in the eye, you know, I really don't know. I know I never closed my fist ever and I never punched him."
 {¶ 9} On July 18, 2005, a complaint was filed charging appellant with assault pursuant to R.C. 2903.13(A), a misdemeanor of the first degree. On August 2, 2004, appellant entered a plea of not guilty.
 {¶ 10} The matter proceeded to a bench trial on October 24, 2005 after which appellant was found guilty. Appellant was sentenced to one-hundred-eighty days in jail, with one-hundred-sixty days suspended. Appellant was placed on unsupervised community control for a period of five years and was required to pay restitution to Peterson in the amount of $212 for lost wages. Appellant was additionally ordered to have no contact with Peterson and Georgia.
 {¶ 11} Appellant now appeals his conviction and asserts three assignments of error for our review:
 {¶ 12} "[1.] The state produced insufficient evidence to support appellant's conviction for assault, a misdemeanor of the fourth degree.
 {¶ 13} "[2.] Appellant's conviction for assault was against the manifest weight of the evidence.
 {¶ 14} "[3.] Appellant was denied the effective assistance of trial counsel as guaranteed by the sixth amanedment [sic] to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 15} Appellant's first assignment of error challenges the sufficiency of the evidence on which his conviction was based.
 {¶ 16} When measuring the sufficiency of the evidence, an appellate court must consider whether the state set forth adequate evidence to sustain the jury's verdict as a matter of law. City of Kent v. Kinsey, 11th Dist. No. 2003-P-0056,2004-Ohio-4699, at ¶ 11. A verdict is supported by sufficient evidence when, after viewing the evidence most strongly in favor of the prosecution, there is substantial evidence upon which a jury could reasonably conclude that the state proved all elements of the offense beyond a reasonable doubt. State v. Schaffer
(1998), 127 Ohio App.3d 501, 503, citing State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, 14-15.
 {¶ 17} Appellant was charged and convicted of assault pursuant to R.C. 2903.13(A). To prove assault the state must introduce sufficient evidence that appellant knowingly caused or attempted to cause physical harm to another. R.C. 2903.13(A). Appellant argues the state failed to introduce sufficient evidence to prove appellant knowingly caused or attempted to cause physical harm to Peterson.
 {¶ 18} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). In nearly all cases where a defendant's mental state must be proved, the state relies upon circumstantial evidence as a matter of necessity.State v. Hill, 11th Dist. No. 2005-A-0010, 2006-Ohio-1166, at ¶ 24, citing, State v. Griffen (1979), 13 Ohio App. 3d 376, 377. Circumstantial evidence possesses the same probative value as direct evidence and therefore should be subjected to the same standard of proof. State v. Jenks (1991), 61 Ohio St. 3d 259, paragraph one of the syllabus. When the state utilizes circumstantial evidence to prove an essential element of the offense charged, there is no need for that evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Id.
 {¶ 19} At trial, the state presented testimony from witness Angela Georgia and the victim, Frank Peterson. Georgia testified she and Peterson repetitively asked appellant and Jenny Smith to leave. When they refused to leave, she threatened to call the police by activating her house alarm system. As Georgia entered her home, she turned around and noticed appellant moving toward Peterson. She then testified she observed appellant close his fist and swing his arm and strike Peterson. Although Peterson's back was facing her, she stated she observed Peterson's "head come back" as appellant made the swinging motion with his fist. Georgia averred that, throughout the confrontation, Peterson was simply telling appellant to leave their property and did not initiate physical contact with appellant.
 {¶ 20} Moreover, when queried as to how he became involved in the matter, Mr. Peterson testified:
 {¶ 21} "We were sitting in our driveway and [appellant] and [Smith] pulled in our driveway, come up behind us and [Smith] started yelling at my girlfriend and I told them `this is my house, this is my yard, please get out of my yard,' numerous times, they wouldn't. And then he started getting aggressive with me, socked me in the eye."
 {¶ 22} Peterson stated he was struck in the right eye. Peterson also testified he did not initiate any contact with appellant.
 {¶ 23} When viewed in a light most favorable to the prosecution, we believe the state presented adequate evidence that appellant knowingly struck Peterson in the eye. The state presented evidence that appellant initiated a confrontation with Peterson and subsequently struck Peterson with his fist. The evidence did not reflect appellant's actions were inadvertent or accidental. As a result, one can draw the reasonable inference that appellant acted "knowingly" in striking Peterson. Thus, we hold the state presented sufficient evidence to sustain appellant's conviction for assault.
 {¶ 24} Appellant's first assignment of error lacks merit.
 {¶ 25} Appellant's second assignment of error argues his conviction was against the weight of the evidence.
 {¶ 26} "`In determining whether the verdict was against the manifest weight of the evidence, `* * * the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, 14-15, quoting, State v.Davis (1988), 49 Ohio App.3d 109, 113.
 {¶ 27} The determination of witness credibility is primarily left to the trier of fact who is in the best position to observe and evaluate the demeanor, voice inflection, and gestures of the witnesses. State v. Kyser (Aug. 10, 2000), 7th Dist. No. 98 CA 144, 2000 Ohio App. LEXIS 3687, 16-17.
 {¶ 28} Appellant asserts the trial court clearly lost its way in convicting him of assault because the testimony of the state's witnesses was rife with inconsistencies. Generally, appellant claims that Georgia's and Peterson's testimony that Peterson "did nothing" throughout the episode leading to the instant charge is inconsistent with other aspects of their testimony; namely, appellant points out that Georgia testified she was "mad" that Peterson initially stepped between herself and Smith. He further notes Georgia testified that, after Peterson was struck, a scuffle ensued between both men. Moreover, Peterson's testimony that "everyone was yelling and screaming" was inconsistent with his testimony that he merely advised appellant and Smith to leave.
 {¶ 29} A review of the proceedings reveals that both Georgia and Peterson each testified Peterson did not initiate contact with appellant. In this respect, he "did nothing" to prompt a physical confrontation. However, there was ample testimony that Peterson actively participated in the confrontation by (1) loudly ordering appellant and Smith off his property and (2) twice pushing appellant to the ground after appellant struck him. In the context of the entire trial, we do not believe these purported "inconsistencies" are problematic. Accordingly, we hold appellant's conviction is not against the manifest weight of the evidence.
 {¶ 30} Appellant's second assignment of error is without merit.
 {¶ 31} Under his final assignment of error, appellant contends he was deprived of the effective assistance of trial counsel.
 {¶ 32} In State v. Bradley (1989), 42 Ohio St.3d 136, the Supreme Court of Ohio held:
 {¶ 33} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
 {¶ 34} "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." (Internal citations omitted.) Id. at paragraphs two and three of the syllabus.
 {¶ 35} A reasonable probability is that quantum of proof sufficient to undermine confidence in the outcome. Strickland v.Washington (1984), 466 U.S. 668, 694.
 {¶ 36} We bear in mind that counsel's professional decisions enjoy a high measure of deference; as a result, trial counsel is entitled to a presumption that his or her challenged acts or omissions involve a sound trial strategy. See, e.g.,Strickland, supra, at 689.
 {¶ 37} The decision to call a witness is "`within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 125, quoting State v. Treesh, 90 Ohio St.3d 460, 490, 2001-Ohio-4. Hence, where the decision not to call a witness is debatable, it does not constitute ineffective assistance of counsel. State v. Martin, 2d Dist. No. 20610, 2005-Ohio-1369, at ¶ 19.
 {¶ 38} Appellant's ineffectiveness claim is premised upon his trial counsel's failure to call Smith to testify at trial. In support, appellant asserts his "belief" that Smith's testimony would have helped his defense. In his own words, appellant observes "[h]ad trial counsel subpoenaed Smith to testify regarding what transpired on the night in question, a reasonable probability exists that the outcome would have been different."
 {¶ 39} Under the circumstances, appellant fails to offer any details as to the content of Smith's would-be testimony. There was no proffer at trial and appellant does not assert how or why he believes Smith's testimony would have changed the outcome of the proceedings. The record shows there were two competing versions of the facts, those facts offered by the state's witnesses and those by appellant. We have no reason to believe that, even had Smith been called to testify, her testimony would have differed significantly from these versions and, we presume, would have likely followed appellant's version. However, the failure to present testimony which is essentially cumulative is not unreasonable and, in essence, represents a sound trial strategy. Thus, the failure to call Smith was not a violation of any duty that trial counsel owed to his client.
 {¶ 40} However, assuming counsel's performance fell below reasonable standards, he fails to demonstrate prejudice. Appellant's argument is tenuously premised upon his subjective belief that Smith's testimony would have changed the outcome. Such blank assurances are insufficient to show prejudice underStrickland. We believe the conclusion appellant urges us to reach can only be drawn with the assistance of a detailed account of the nature of Smith's testimony in conjunction with a demonstration as to how its absence reasonably undermined the reliability of the conviction. Appellant has made no such showing. Thus, appellant has failed to show a reasonable probability that, but for counsel's errors, the result of the trial would have been different.
 {¶ 41} Appellant's third assignment of error lacks merit.
 {¶ 42} For the foregoing reasons, appellant's three assignments of error are overruled and the judgment of the Conneaut Municipal Court is therefore affirmed.
Ford, P.J., O'Neill, J., concur.